## Berman v. Berman

*Henry Miller, III,* for plaintiff.
*Paul V. Ressler,* for defendant.

STRASSBURGER, *J.,* March 31, 1983—Plaintiff, Helen P. Berman (wife), and defendant, William Berman (husband), were married in 1971. On April 2, 1982, wife filed an action in divorce under section

201(c) or section 201(d) of the Divorce Code alleging that the marriage was irretrievably broken. On August 26, 1982, affidavits of consent under section 201(c) were filed by both parties. However, for reasons which do not appear of record, neither party at that time sought the entry of a divorce decree as permitted under Local Rule 1920.42*II(A).[1]

On November 18, 1982, husband filed a document entitled "Withdrawal of Consent" which states:

"The undersigned, William Berman, Defendant in the above captioned action, hereby withdraws his Consent to the entry of a final decree of divorce in said action."

The issue before this court is whether a divorce may now be granted, or whether husband's "Withdrawal of Consent" prevents the granting of a divorce. Put another way, did husband have any right to withdraw his consent?

Our research indicates that this is a matter of first impression. There are no Pennsylvania cases precisely in point, and it would seem that case law from other jurisdictions is of little help because Pennsylvania's statute permitting divorce merely upon the mutual consent of the parties appears to be unique.

Both parties have relied upon Brems v. Brems, 21 D.&C.3d 646 (1982). There the parties in open court entered into a consent decree by which they agreed to be divorced, to distribute all of their mari-

1. Local Rule 1920.42*II(A): "If a complaint and the affidavits of each party have been filed under Section 201(c) of the Divorce Code, the court will, on its own motion, review the complaint and affidavits and, if appropriate, enter a final decree. The moving party is responsible for transferring the original divorce file (from Room 504 Courthouse) to Room 633 of the City-County Building in order to initiate review by the court."

tal property, and for the husband to pay alimony. The wife then signed a section 201(c) consent which was held by her attorney. Two weeks later, wife changed her mind and advised her attorney not to proceed with the agreement. In the husband's action for specific performance of the agreement, the court enforced the property provisions and the alimony so far as possible but refused to enforce the agreement to obtain a consensual divorce. The court stated:

"We do not believe the court is empowered or that it would be good policy to direct a party to have consented by virtue of an agreement to do so in the future. Because the status of marriage is of distinctly personal dimensions, *a person has an unqualified right to change his or her mind and to refuse to consent to be divorced, at least, as here, where the consent, though signed, has not been delivered or filed.*" (Emphasis added.)

In the instant case, husband relies upon the language that "a person has an unqualified right to change his or her mind and refuse to consent to be divorced". On the other hand, wife points to the language "at least, as here, where the consent, though signed, has not been delivered or filed" and notes that here the consent has indeed been delivered and filed. It thus appears that Brems is of little assistance in this matter. Nor are we persuaded by the other cases cited by husband which as he admits arise in different contexts.

However, our review of the legislative intent of the Divorce Code, as implemented both by the provisions therein and by the Rules of Civil Procedure promulgated thereunder, convinces us that in the context of this case, husband should be permitted to withdraw his consent.

While the Divorce Code represents a tremendous liberalization of divorce law in Pennsylvania, it

nonetheless evidences a legislative intention that marriages should be preserved whenever a glimmer of a possibility of preservation exists. The code states in §102(a)(2) that:

"(a) The family is the basic unit in society and the protection and preservation of the family is of paramount public concern. Therefore it is hereby declared to be the policy of the Commonwealth of Pennsylvania to:

. . .

(2) Encourage and effect reconciliation and settlement of differences between spouses."

To that effect the code does not permit unilateral no-fault divorce unless the parties have lived separate and apart for a period of at least three years, although earlier drafts of the bill which became law provided for much shorter time periods.[2] Divorce Code, section 201(d).

Similarly, even for mutual consent divorces, the code provides for a 90 day waiting or cooling off period after the filing of the action. Section 201(c).

Moreover, in the counseling provision of §202, the legislature has gone to great lengths to attempt to preserve marriages, even though once a marriage has reached divorce court, counselling is almost always futile.

The rules of court likewise show an intention that matters not proceed precipitously. Rule 1920.41 prohibits default judgment or judgment on the pleadings in divorce actions. Rule 1920.15 permits collateral claims to be raised until the time of entry of a final decree in divorce. Local Rule 1920.42*II(B) requires a special "Court Notice" giv-

---

2. See H.B. 640, Session of 1979, Printer's Nos. 692 and 1571.

ing defendant an additional 20 days to deny a §201(d) affidavit of three year separation.

While the code and the rules recognize divorces as a reality in the lives of many Pennsylvanians, they also set forth an intent that such an important step in the lives of its citizenry should not be taken lightly or without reflection.

It is thus our view that husband may change his mind[3] and that his "Withdrawal of Consent" is effective to prevent a section 201(c) divorce.

---

3. As a result of the Equal Rights Amendment to the Pennsylvania Constitution, Art. 1, §28, the prerogative to change one's mind applies equally to males.